Signed and Filed: June 12, 2018

**HANNAH L. BLUMENSTIEL**
U.S. Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | ) Case No. 18-30061 HLB |
| CO DUONG and COLLEEN NGUYEN, | ) Chapter 7 |
| Debtors. | ) |

**ORDER REGARDING DISCOVERY DISPUTE**

On June 1, 2018, the court received correspondence from Mr. Reno Fernandez, whose firm MacDonald|Fernandez LLP represents creditor 70 Fahrenheit, Inc. ("70 Fahrenheit") in connection with this bankruptcy case and a related adversary proceeding, No. 18-3009. Mr. Fernandez' correspondence requested the court's assistance with a discovery dispute that has arisen between 70 Fahrenheit and Joint Debtors Co Duong and Colleen Nguyen.

Mr. Fernandez insisted that the court order: (1) Mr. Duong and Ms. Nguyen to produce documents just 6 days after the court received his letter (effectively insisting that the court afford the Debtors no time to respond to his demand); (2) Mr. Duong and Ms. Nguyen to appear at a certain branch of Chase Bank for the purpose of providing access to two safe deposit boxes ("Box 4703" and "Box 5639") so that their contents could

be inspected; (3) that, should the Debtors fail to appear or open Box 4703 and Box 5639, 70 Fahrenheit is authorized to open the boxes by force and to store the contents with its counsel pending further order of the court; (4) that "Chase Bank and all concerned shall provide access" to the safe deposit boxes to Mr. Fernandez;[1] and (5) Mr. Duong and Ms. Nguyen shall appear for examination under Rule 2004 of the Federal Rules of Bankruptcy Procedure on Friday, June 22, 2018 at 1:00 p.m. at Mr. Fernandez' San Francisco.

The court gave the Debtors until June 8, 2018 to respond. On June 7, 2018, the court received a response from attorney Eric Shaw of Weyland Law Firm APC, who represents Mr. Bo Du and Ms. Thuy Tran (husband and wife), and their adult son, Mr. Cuong Du. Ms. Tran is Mr. Duong's sister and he allegedly sponsored Ms. Tran's family when they immigrated to the United States approximately 20 years ago. According to Mr. Shaw, Mr. Duong opened a bank account for Ms. Tran and her family when they came to the United States and with that account came rights to a safe deposit box (identified by a number ending in 5979; "Box 5979"). Mr. Shaw relates that, although Mr. Duong is a signatory on Box 5979, he turned over his key to Ms. Tran, has not accessed its contents in more than 20 years, and claims no interest in its contents. Mr. Shaw suggests that, rather than permitting Mr. Fernandez to forcibly open Box 5979, the

---

[1] This request is particularly startling because Chase Bank is not a party to these proceedings; has in no way subjected itself to the jurisdiction of the court; and, at least as far as the court can tell, has not been served with a discovery subpoena. The same goes without saying as to the as-yet-unidentified "all concerned."

court direct him to review Chase Bank's records concerning who has accessed Box 5979, and when.  According to Mr. Shaw's clients, no one has accessed Box 5979 since July 2017, a date prior to the events giving rise to the claims and cross-claims between 70 Fahrenheit and the Debtors.  Assuming this is true, the contents of Box 5979 would be irrelevant to those disputes.

The court first notes that Mr. Fernandez' correspondence makes no mention of Box 5979.  Nor do the Debtors, in their frequently amended schedules and statements of financial affairs,[2] make any mention of an account or safe deposit box ending in 5979.  This makes much of Mr. Shaw's letter irrelevant.  According to Mr. Fernandez' letter, 70 Fahrenheit is interested only in the contents of Box 5639 and Box 4703, and the court will take Mr. Fernandez at his word.

On June 8, 2018, the court received a response from Mr. Duong and Ms. Nguyen, through their counsel, Ms. Nancy Weng of Tsao-Wu & Yee LLP.  According to Ms. Weng, "[t]here is no 'discovery dispute'."  She states that 70 Fahrenheit served the Debtors with two requests for production of documents (each an "RPD") on March 27, 2018:  one that demanded all documents relating to the Debtors' sale of their house in December 2017 and another that demanded inspection of Box 4703 and Box 5639. Ms. Weng claims her clients satisfied their obligation with

---

[2] See Dkt 13 (Debtors' original Schedules A-J, filed January 27, 2018); Dkt. 15 (Debtors' original Statement of Financial Affairs, filed January 27, 2018); Dkt. 26 (Debtors' first Amended Statement of Financial Affairs, filed February 19, 2018); Dkt. 27 (Debtors' first Amended Schedules A/B, filed February 19, 2018); Dkt. 33 (Debtors' second Amended Statement of Financial Affairs, filed March 8, 2018); Dkt. 42 (Debtors' third Amended Statement of Financial Affairs, filed April 5, 2018); and Dkt. 45 (Debtors' fourth Amended Statement of Financial Affairs, filed April 6, 2018).

respect to the RPD that demanded documents concerning the sale of their home by providing 70 Fahrenheit with a copy of the closing statement on March 20, 2018.  As to the other RPD, Ms. Weng claims that the Debtors do not own "the box" and are unable to provide 70 Fahrenheit with access to it.

While the court believes that 70 Fahrenheit's demands are ridiculously aggressive – particularly given that a Chapter 7 Trustee has been appointed and charged with investigating the Debtors' assets, including any transfers thereof – the court also finds the Debtors' response infuriating.

The Debtors' story about various transactions and assets has changed multiple times, and the same is true with respect to safe deposit boxes.  In their original Schedule B (Dkt. 13; items 17.5 and 17.6), the Debtors attested under penalty of perjury that they had deposited an unknown amount of money in a safe deposit box located at Chase Bank, identified as "xxx5639." They described this as a "Jt account of co-debtor with Debtor's sister" that had been "frozen."  Debtors also attested that they had deposited an unknown amount of funds into a Chase checking account identified as number "xxx4307," which had also been "frozen."[3]

In their first Amended Schedule A/B (Dkt. 27), the Debtors changed their description of the deposit disclosed in Item 17.5 to a checking account in which they had deposited $25,000. Other information provided in Item 17.5 remained the same.  As

---

[3] The court has no idea if this alleged checking account actually is a safe deposit box or if there is no Box 4703 or if either Ms. Weng or Mr. Fernandez has transposed two of the last 4 identifying digits of the account or safe deposit box.

to the deposit described in Item 17.6, the Debtors disclosed that it contained "$0.00." All other information in Item 17.6 remained the same.

In their original Statement of Financial Affairs (Dkt. 15), however, the Debtors stated under penalty of perjury in response to Item 10, which asked them to disclose all property that had been attached, levied, repossessed, garnished, etc. within one year of the filing of their petition for relief,[4] that a Chase checking account identified as "xxx5639," and which contained an "unknown" amount of funds, had been attached, levied, or seized in January 2018. They stated the same as to an account identified as "xxx4307." In response to Item 21, which asked whether the Debtors have, or had within one year before they filed this case, any safe deposit box or other depository for securities, cash, or other valuables, the Debtors stated under penalty of perjury: "No." In short, their original Statement of Financial Affairs directly contradicted their original Schedules, without explanation.

The Debtors' four amendments to their Statement of Financial Affairs were, at least with respect to their responses to Item nos. 10 and 21, identical to their original. But, on April 5, 2018, as an attachment to their third Amended Statement of Financial Affairs (Dkt. 42), the Debtors filed a Declaration from Mr. Duong that addressed "Money Spent from Sale of House" (Dkt. 42-1). Mr. Duong attested to receiving "$788,214.01 in net profits from the sale of my home. The

---

[4] The Debtors commenced this case on January 18, 2018.

proceeds as the following [sic] . . . Chase Safe Deposit Box 1 . . . $80,000 . . . Frozen Account" and "Chase Safe Deposit Box 2 . . . $0.00 . . . Frozen Account (empty box)." Mr. Duong also attested "my wife and I sold our house . . . in Dec. 2017." In other words, Mr. Duong's Declaration, which he signed under penalty of perjury, directly contradicted his and Ms. Nguyen's statements in their original and amended Schedule B and in every single version of their Statement of Financial Affairs regarding deposits to safe deposit boxes and attached or seized property, each of which was also made under penalty of perjury. These Debtors cannot get their stories straight and either do not understand or do not respect what it means to make a statement in federal court under penalty of perjury. This lack of "truthiness" is exactly what led the court to convert this case from Chapter 13 to Chapter 7,[5] which caused the appointment of a Trustee.

    Once appointed, a Chapter 7 Trustee is charged with, among many other things, investigating the financial affairs of the debtor. 11 U.S.C. § 704(a)(4). The Chapter 7 Trustee appointed in this case is very experienced, as is her counsel. The court has no intention of issuing orders directed to unidentified parties or to parties not yet within its jurisdiction, or authorizing what amounts to the destruction of property (opening safe deposit boxes by force), or permitting Mr. Fernandez to take possession of property that either belongs to this bankruptcy estate (and should be in the

---

[5] See Dkt. 58 (April 19, 2018).

Trustee's hands) or to a third party. 70 Fahrenheit's demands, as expressed in Mr. Fernandez' letter, simply go way too far.

But the court also notes that the Debtors did not oppose 70 Fahrenheit's application for permission to examine them pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and did not object to the RPDs when they were served. And the Debtors have not, contrary to Ms. Weng's assertion, satisfied their obligations in responding to discovery.

First, producing a single closing statement in response to an RPD that demanded "all documents relating to or created, sent or received by [the Debtors] in connection with the use, disposition or transfer of any proceeds from the sale of that certain real property located at 1223 37th Avenue in San Francisco, California, which sale was completed in December of 2017" does not suffice. Debtors must conduct a reasonable search for all material – documents, letters, emails, electronic records, etc. – within their possession or control that is responsive to this RPD and must produce a copy of such material to Mr. Fernandez. They need not, of course, produce material that protected from disclosure by the attorney-client privilege or by some other privilege, or that constitutes attorney work product.

The Debtors also must appear for examinations as ordered. 70 Fahrenheit originally scheduled the examinations for May 11, 2018, but the Debtors did not appear, despite having promised to do so. Ms. Weng's letter does not address this, other than to say "the Debtors do not have an issue with sitting for a

2004 exam, only that it be for a date that their of counsel [sic] is also available."

And finally, as to the safe deposit boxes, the court simply does not have information sufficient to permit it to order anything. The Debtors have conceded to depositing money in at least one such box, but the court has no idea where those boxes are, what their identifying numbers are, whether some other party also has rights to the boxes and/or their contents, etc.

Accordingly, the court **ORDERS** as follows:

1. Within 14 calendar days from the date of entry of this order, the Debtor shall conduct a search of their electronic and hard copy records for material responsive to 70 Fahrenheit's RPD concerning the December 2017 sale of the 37th Avenue property and the disposition of the proceeds they received from that sale. Any such material shall be produced to Mr. Fernandez in a mutually agreeable format no later than June 29, 2018. No later than July 6, 2018, the Debtors shall file and serve a declaration describing what they did to search for responsive discovery material, and describe generally what, if any, additional documents or other material they located during the course of that search. If the Debtors located additional responsive material, but did not produce it because they believe it protected by some privilege or by the attorney work product doctrine, they shall, no later than June 29, 2018 provide Mr. Fernandez with an appropriate privilege log.

2. Within 30 calendar days from the date of entry of this order, Mr. Duong and Ms. Nguyen shall appear for an

examination under Rule 2004 of the Federal Rules of Bankruptcy Procedure. The date(s) of the examination shall be one or more dates that are mutually agreeable to the parties and their counsel. Consistent with its original order (Dkt. 54), each examination is limited to 4 hours of time on the record. The examinations shall take place at the law offices of MacDonald|Fernandez, 221 Sansome Street, San Francisco, California.

3. On or before June 26, 2018, the Debtors shall file and serve a declaration attesting under penalty of perjury to each and every safe deposit box they have used or had access to in or after January 2016, identifying any such safe deposit box by number, describing the contents thereof, and identifying any third party who might have rights to each box and/or its contents and the basis for such a claim of right. Upon reviewing that declaration, the court will issue a further order.

4. Failure to comply with any part of this order will result in sanctions. Sanctions may be imposed against the non-compliant party and/or that party's counsel, as appropriate, and may include monetary or other sanctions, as the court deems appropriate.

**\*\*END OF ORDER\*\***

**Court Service List**

Eric C. Shaw
Weyand Law Firm
2490 Mariner Square Loop
Suite 213
Alameda, CA 94501